512 A.2d 607

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Harold Edwin CASETY, Jr., Respondent.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 1985.

Decided June 30, 1986.

Samuel C. Stretton, West Chester, for respondent.

Albert M. Nichols, Chief Counsel, John W. Herron, Asst. Disc. Counsel-in-charge, Philadelphia, Paul J. Burgoyne, Asst. Disc. Counsel, West Chester, for petitioner.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## ORDER

PER CURIAM.

Having reviewed the Petition for Reargument filed by Harold Edwin Casety, Jr., and the Opinion of the Court filed in this matter on December 13, 1985, it appears that revisions on pages nine (9) and twelve (12) of the Opinion are required, and that these corrections can be made without reargument. Accordingly, the Petition shall be considered as a Petition for Reconsideration and is granted. The Prothonotary is directed to file the attached corrected Opinion and to withdraw the Opinion filed by the court on December 13, 1985, 502 A.2d 177.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Harold. Edwin Casety, Jr. (Casety) has petitioned this Court from the Finding of Facts and Recommended Discipline of the Disciplinary Board (Board) of this Court recommending that Casety be disbarred from the practice of law.[1] The facts are not in dispute and can be briefly summarized.

---

1. The Disciplinary Board of the Supreme Court exists pursuant to the Pennsylvania Rules of Disciplinary Enforcement, Pa.R.D.E. 205, and is authorized to investigate conduct of attorneys subject to our discipline. After a hearing committee conducts hearings into an attorney's alleged misconduct, it makes recommendations as to the disposition of the charges filed against an attorney. The full Board then is required to review same and make its final recommendation to us. See Pa.R.D.E. Rules 205, 206 and 208.

Casety was admitted to the practice of law in 1972, and practiced continuously in the Commonwealth until mid-1979, when he and his girlfriend moved to California. On November 22, 1979, he killed his girlfriend, shooting her five times in various parts of her body. Casety admitted shooting his girlfriend and immediately turned himself over to the police.

After being charged with murder and use of a firearm during the commission of a crime, Casety pled guilty to voluntary manslaughter as defined by the California Penal Code (CPC) § 192, subd. 1,[2] and to using a firearm during the commission of a felony within the meaning of CPC §§ 12022.5, 1203.06(a)(1)(i).[3]

As a result of the plea, Casety was sentenced to a term of imprisonment of four years for manslaughter, and two years for using a firearm during the commission of a crime. Casety served almost three and one-half (3½) years of his sentence in prison before being paroled. He was permitted to return to Pennsylvania to complete his parole, which he successfully completed on October 20, 1984.

After returning to Pennsylvania, Casety, for the first time, notified the Disciplinary Council of his California

---

**2.** The California Penal Code at § 192, subd. 1 provides in pertinent part:
> Manslaughter is the unlawful killing of a human being without malice. It is of three kinds:
> 1) Voluntary—upon a sudden quarrel or heat of passion...

**3.** The California Penal Code at § 12022.5, provides:
> *Use of firearm in commission of felony or attempt; additional punishment; disposal of firearm*
> Any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of imprisonment in the state prison for two years, unless use of a firearm is an element of the offense of which he was convicted. Section 1203.06(a)(1)(i) provides:
> (a) Probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any of the following crimes:
> (1) Any person who personally used a firearm during the commission or attempted commission of any of the following crimes:
> (i) Murder.

conviction for voluntary manslaughter.[4]   After Casety's June 6, 1984, notification to the Board, we suspended Casety from the practice of law pursuant to Pennsylvania Rule of Disciplinary Enforcement (Pa.R.D.E.) 214(d), pending final disposition of disciplinary proceedings to be instituted as a result of the conviction.

A Hearing Committee of the Board conducted its investigation on December 11, 1984, where Casety admitted his conviction and his neglect of four years in notifying the Board of his conviction.   At that proceeding, Casety presented evidence only as to the nature of the discipline to be imposed.   The Hearing Committee found that Casety's conviction and deliberate failure to notify the Board of his conviction warranted a five year suspension, effective July 13, 1984, the date of our interim suspension order.

A panel of the full Board heard Exceptions to the Hearing Committee's recommendation.   The Board adopted the Hearing Committee's findings, but based on its review of the facts and violations involved, on July 24, 1985, recommended that Casety be disbarred.   We granted Casety's request for oral argument from the Board's findings and recommendations.

Casety acknowledges that his conduct requires that he be disciplined, but contends that a five-year suspension retroactive to April 20, 1980, the date of his guilty plea, would serve both justice and the legal profession.   In support of his argument, Casety notes that he has served his incarceration and parole periods without incident, has successfully reformed prior alcohol and drug dependencies which were partially responsible for his conduct in killing his girlfriend, and has made arrangements with the girlfriend's family to make some form of restitution.

The Office of the Disciplinary Counsel argues that Casety's conviction for voluntary manslaughter, coupled with his deliberate failure to report the conviction to the Board,

---

**4.** On August 15, 1984, Casety also informed the Florida Bar of his conviction.   The Supreme Court of Florida responded by suspending Casety from the practice of law on November 13, 1984.

constitutes misconduct which requires that Casety be disbarred as of July 13, 1984, the date of our interim suspension.

Pa.R.D.E. 214(d) makes clear that any attorney "convicted of a crime which is punishable for one year or upwards in this or any other jurisdiction, excluding violations of the Motor Vehicle Code or a similar law of another jurisdiction," is subject to immediate suspension pending the final disposition of a disciplinary proceeding. Furthermore, once convicted of a crime, an attorney is required to report the fact of his conviction to the Secretary of the Board within twenty (20) days of the date of sentencing. Pa.R.D.E. 214(a). Any proceedings before the Board or its Hearing Committee under Rule 214 are limited to determining the extent of the final discipline to be imposed, which can consist of any of those disciplines permitted by Rule 204(a).[5]

■ Our review of the Board's findings and recommended discipline is *de novo,* and we are free to evaluate for ourselves the evidence presented before the Hearing Committee. *Office of the Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983); *Office of the Disciplinary Counsel v. Kneep,* 497 Pa. 396, 441 A.2d 1197 (1982); *Office of the Disciplinary Counsel v. Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981). In this case, however, Casety admits his misconduct and, therefore, there are no factual disputes. Where the disciplinary proceeding arises out of an attorney's conviction of a crime, our inquiry must focus on whether the attorney's character, as shown by his conduct, makes him unfit to practice law from the standpoint of protecting the public and the courts. *Office of the Discipli-*

---

5. Rule 204(a) provides:
   (a) Misconduct shall be grounds for:
      1) Disbarment by the Supreme Court.
      2) Suspension by the Supreme Court with or without probation.
      3) Public censure by the Supreme Court for a period not exceeding five years.
      4) Probation by the Supreme Court under supervision provided by the Board.
      5) Private reprimand by the Board with or without probation.
      6) Private informal admonition by the Disciplinary Board.

*nary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975).

■ The Board's factual findings and our review of the record make it clear that Casety's actions surrounding his girlfriend's murder were reprehensible and showed a total indifference and disrespect for the law. At the time of the shooting, Casety had already ingested large amounts of sleeping pills and Bentyl tablets (a stimulant), mixing these drugs with at least a half gallon of wine, and was having a bitter argument with his girlfriend. These parties had apparently argued violently before, with Casety trying to "bluff" his girlfriend into staying with him by brandishing a gun at her. On November 22, 1979, Thanksgiving Day, Casety's "bluffs" did not appear to be working and, in a fit of anger, he emptied five bullets into Patricia Bovino's body, causing her death.

We see in Casety's conduct intemperance, as well as illegality and moral reprehensibility. As lawyers, we are bound to maintain high standards of professional conduct at all times. Ethical Consideration E.C. 1–5 of the Rules of Professional Responsibility sets the aspirational standard for a lawyer's conduct:

> ... He should be temperate and dignified, and he should refrain from all illegal and morally reprehensible conduct. Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude."

As the United States Supreme Court stated in *Ex parte Wall,* 107 U.S. 265, 274, 25 S.Ct. 569, 576, 27 L.Ed. 552 (1882):

> Of all classes and professions, the lawyer is most sacredly bound to uphold the laws. He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws ... argues recreancy to his position and office.... It manifests a want of fidelity to the

system of lawful government which he has sworn to uphold and preserve.

Where one who has sworn to uphold the law actively breaches it, his fitness to practice is unquestionably destroyed. *Campbell.* Casety's repudiation of society's rules and indulgence in alcohol and drug abuse and homicidal conduct were serious rejections of the oath he undertook to uphold the law. We cannot condone such conduct because it destroys public confidence in the legal profession. An attorney who shows such disrespect for the law has forfeited his privilege to be numbered as an attorney, and is not competent to represent members of the public or to appear before courts.

If that were all the record revealed, we would disbar Casety with little difficulty. Clearly, he was convicted of a crime and thereby violated DR 1–102(A)(1), (3) and (6).[6] In this proceeding, however, Casety's subsequent conduct more than convinces us that disbarment is the only proper discipline. Once having been convicted of a heinous crime in California, he was honor bound to report such fact to Pennsylvania. Not only did he fail to do so, he deliberately withheld this information and continued to deceive the Administrative Office of Pennsylvania Courts (AOPC) that he was in active practice *in Pennsylvania* by executing and filing the AOPC's filing statements for the years 1981, 1982 and 1983. He accomplished this deceit by using a false business address in Pennsylvania (a friend's business address) and by having a friend pay the required annual registration fee out of funds Casety maintained in Pennsylvania.

After Pa.R.D.E. 214(a)[7] became effective on April 2, 1983, and while he was still incarcerated in California, he

6. DR 1–102(A)(1), (3) and (6) provide:
(A) A lawyer shall not:
1) Violate a Disciplinary Rule.
3) Engage in illegal conduct involving moral turpitude.
6) Engage in any other conduct that adversely reflects on his fitness to practice law.

7. Pa.R.D.E. 214(a) provides:

failed to report his conviction within twenty (20) days to the Secretary of the Board and continued to ignore this obligation for more than a year until June 6, 1984. Surely, this obligation applied to all Pennsylvania lawyers whether they were in prison or out of prison. Casety admits that he was aware of his duty to report his conviction, but claims that he was depressed and disoriented and could not deal with the effects of the conviction or of having to notify the Board.

We cannot condone Casety's deliberate misrepresentations and his subsequent violation of Pa.R.D.E. 214(a). While the Board chose not to base its disciplinary action against Casety for his failure to report his conviction because he was not formally charged with this violation in the Petition for Discipline, it does not follow that we cannot consider Casety's admitted conduct in determining the discipline to impose. Such conduct can be considered like any other conduct Casety brought to our attention to show that he had reformed himself.

In this respect, Casety brings to our attention that he turned himself in to the authorities, served his jail term and parole time without incident, has sought help for his drug and alcohol dependencies, and has made plans of restitution to his victim's family. The record also reveals, however, that while Casety was reforming himself he deliberately withheld the fact that he had been convicted, and devised a scheme to misrepresent his ability to continue in active practice during 1981, 1982 and 1983, in violation of D.R. 1–102(A)(4) [8] and 1–103(A).[9]

> (a) An attorney convicted of a crime which is punishable by imprisonment for one year or upward in this or any other jurisdiction, excluding violations of the Motor Vehicle Code or a similar law of another jurisdiction, shall report the fact of such conviction to the Secretary of the Board within 20 days of the date of sentencing. The responsibility of the attorney to make such report shall not be abated because the conviction is under appeal or the clerk of the court has transmitted a certificate to Disciplinary Counsel pursuant to subdivision (b) of this rule.

8. DR 1–102(A)(4) provides that:
   (A) A lawyer shall not:

In weighing Casety's post-conviction conduct, we are impressed by his attempts to serve out his prison sentence without incident, and by his apparently successful drug and alcohol rehabilitation; but we find that, in the meantime, he ignored an equal, if not higher, duty to the Court, bar, and the public, to report his conviction and to advise the system that he was not qualified to practice law. This duty is mandatory and is imposed on lawyers because they are held to the highest standard of ethical and legal behavior. If lawyers are convicted of crimes which require discipline, and then are permitted to hide that fact from the Courts and the public, there is no question that the integrity of the bar will be lowered and that the public will perceive the profession to have been brought into disrepute. Under the circumstances, Casety's post-conviction conduct was far below that expected of a lawyer. That conduct, coupled with his conviction for voluntary manslaughter, requires that we accept the recommendation for discipline. Casety is ordered disbarred as of July 13, 1984, the date of the interim suspension order, and is directed to pay the costs of the investigation and prosecution in this matter.

ZAPPALA, J., filed a dissenting opinion in which HUTCHINSON, J., joined.

ZAPPALA, Justice, dissenting.

Because the majority has placed great emphasis upon the failure of the attorney to report his conviction under Pa.R. D.E. 214(a) in reaching its conclusion that disbarment is appropriate, I must dissent. I would issue a five-year suspension corresponding to the recommendation of the hearing committee and the minority members of the Disciplinary Board. The five-year suspension would be made

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

9. DR 1–103(A) provides:
   A lawyer possessing unprivileged knowledge of a violation of DR 1–102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.

retroactive to July 13, 1984, the effective date of the interim suspension of Harold Casety, Jr. by this Court.

I must also dissent from the majority's retroactive application of Pa.R.D.E. 214(a). The majority acknowledges that the rule did not become effective until April 12, 1983. Harold Casety, Jr. was sentenced prior to the effective date of the rule. Although the rule specifically states that the conviction must be reported within twenty days of the date of sentencing, the majority interprets the rule as imposing a continuing obligation on attorneys to make such a report.

I do not agree with the majority's interpretation. If the rule had been intended to impose a reporting requirement upon an attorney who had been sentenced prior to its enactment, the rule would have stated that an attorney who had been sentenced previously shall report the conviction within twenty days of the effective date of the rule. Although such an addition to the rule may have been desirable, the rule does not provide for the circumstance. I believe that the majority's finding that Casety violated this rule is contrary to the unambiguous language of the rule itself.

HUTCHINSON, J., joins in this dissenting opinion.